UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROBERT YEFTICH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:09-cv-1045-SEB-DML |
| | ) | |
| NAVISTAR, INC., d/b/a NAVISTAR | ) | |
| INTERNATIONAL TRUCK AND | ) | |
| ENGINE CORP., and INDIANAPOLIS | ) | |
| CASTING CORP., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS**

This cause is before the Court on the Motion to Dismiss [Docket No. 24], filed by Defendants, Navistar, Inc., d/b/a Navistar International Truck and Engine Corporation ("Navistar") and Indianapolis Casting Corporation, a wholly-owned subsidiary of Navistar (collectively, "Defendants"), on January 12, 2010, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Plaintiffs bring this action against Defendants, their former employers, alleging that Defendants breached their collective bargaining agreement in violation of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and denied their rights under the Employee Retirement Income Security Act of 1974

---

[1] In their filings, the parties have not differentiated between the conduct of Navistar and that of Indianapolis Casting. Because the parties have treated Navistar and Indianapolis Casting essentially as a single entity throughout the course of these proceedings, we do the same.

("ERISA"), 29 U.S.C. § 1140.  For the reasons detailed in this entry, we <u>GRANT IN PART</u> and <u>DENY IN PART</u> Defendants' Motion to Dismiss.[2]

## Factual Background

Defendants formerly operated an engine plant in Indianapolis, Indiana.  Plaintiffs were employed by Defendants pursuant to the terms of a collective bargaining agreement ("CBA"), related "letters of agreement," and "other contract documents."  Amend. Compl. ¶ 21.  For purposes of collective bargaining, Plaintiffs were represented by the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America ("UAW"), and two of its local union affiliates, Locals 98 and 226 ("the Unions").  Id. ¶¶ 32-34.

On or about January 27, 2009, Defendants informed the Unions that it intended to close the Indianapolis facility because of financial issues.  Before the plant closed, all forty-three Plaintiffs were laid-off due, according to Defendants, to a lack of work at the facility.  Id. ¶¶ 25-26, 39.  Plaintiffs allege, however, that the reason there was a lack of work at the Indianapolis facility was not because there was no work to be completed but because Defendants subcontracted the work that was available to unspecified non-union plants, rather than assigning it to Plaintiffs.  Plaintiffs subsequently filed grievances alleging that Defendants had violated the CBA by subcontracting their work to non-union

---

[2] On April 1, 2010, Plaintiffs filed a Motion for Oral Argument [Docket No. 41]. Because we are able to reach our decision based on the parties' written submissions, oral argument on the issues before us is unnecessary, and Plaintiffs' Motion for Oral Argument is hereby <u>DENIED</u>.

2

plants and by failing to recall them to the Indianapolis plant as work became available. Id. ¶¶ 35-36. According to Plaintiffs, the terms of the CBA prohibited subcontracting the work Plaintiffs performed to third parties and provided that, if Plaintiffs were laid off, they would be provided priority recall rights. Id. ¶ 22. Plaintiffs allege that some of their grievances were denied by Defendants and that most others were left pending before Defendants and the Unions. It is undisputed that none of Plaintiffs' grievances have proceeded to arbitration pursuant to the terms of the CBA.

The CBA also established "qualified welfare benefit protection plans" ("the Plans"), which are governed by ERISA and include health care, retirement, and life insurance. Plaintiffs are participants in, and beneficiaries of, the Plans. Id. ¶ 23. Plaintiffs allege that Defendants laid them off, transferred the work they previously performed to other non-union plants, and closed the Indianapolis facility, not because of economic conditions as Defendants claim, but for the express purpose of denying them their rights under the Plans.

On July 27, 2009, Plaintiffs filed their Complaint in Marion Circuit Court. The cause of action was removed to this Court on August 25, 2009. On December 28, 2009, Plaintiffs filed their First Amended Complaint and on January 12, 2010, Defendants filed the instant Motion to Dismiss.

## Legal Analysis

I. **Standard of Review**

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand the requirements of Federal Rules of Civil Procedure 8 and 12(b)(6). Id. A party moving to dismiss nonetheless bears a weighty burden. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. 544, 563 (2007) (citing Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) ("[At the pleading stage] the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.")). In addressing a Rule 12(b)(6) motion, we treat all well-pleaded factual allegations as true, and we construe all inferences that reasonably may be drawn from those facts in the light most favorable to the non-movant. Lee v. City of Chicago, 330 F.3d 456, 459 (7th Cir. 2003); Szumny v. Am. Gen. Fin., 246 F.3d 1065, 1067 (7th Cir. 2001).

## II.     Breach of the Collective Bargaining Agreement

In Count I, Plaintiffs allege that Defendants breached the CBA by subcontracting the work that was available at the Indianapolis plant to non-union plants and by failing to recall Plaintiffs after they had been laid off to perform work when it did become available. No claim has been made against the Union(s) in Count I. Section 301 of the LMRA provides for suits "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. §

185(a). In order to sue for damages under § 301, an employee must bring a "hybrid Section 301/fair representation claim." DelCostello, 462 U.S. at 165. The hybrid suit consists of two distinct causes of action: a suit against the employer for breach of the agreement and a suit against the union for breach of the duty of fair representation. Id. at 164. Proof of the union's failure to fairly represent the plaintiffs serves as an "indispensable predicate" or "condition precedent" to suits by employees under Section 301. Id. at 164-65. While a plaintiff may choose to name only the employer as a defendant, they are still required to prove a breach by both the employer and the union to prevail on their claim. Id. at 165.

In order to state a claim that a union breached its duty of fair representation, a plaintiff must allege conduct that is "so far outside a wide range of reasonableness as to be irrational." McCleod v. Arrow Transport, Inc., 258 F.3d 608, 613 (7th Cir. 2001). A union breaches its duty when it acts in a "discriminatory, dishonest, arbitrary, or perfunctory manner." DelCostello, 462 U.S. at 164. Under Seventh Circuit law, in order to state a claim for breach of the duty of fair representation, a plaintiff must establish that a union's conduct was "intentional, invidious, and directed at the employee." Thomas v. United Parcel Serv., Inc., 890 F.2d 909, 915 (7th Cir. 1989).

Plaintiffs' Amended Complaint without specifically naming the Unions as defendants does allege that the Unions breached their duty of fair representation by misleading them about the status of their grievances "by telling them that hundreds of such grievances filed over a period of years await further action by high Union officials,

5

when in fact, upon information and belief, none have been processed and all are dead." Am. Compl. ¶ 38. Plaintiffs further allege that the Unions "invidiously diverted, stalled, and otherwise terminated and abandoned the grievances," (id. ¶ 37), and "breached their duties of fair representation by acting in a discriminatory, arbitrary, perfunctory, hostile, fraudulent, misleading, and bad faith manner." Id. ¶ 52.

The only one of these allegations that is not wholly conclusory is Plaintiffs' claim that they were misled by an unnamed union official who told them that their grievances were awaiting further action, when, according to Plaintiffs, none were being processed. However, while slightly more specific than their other allegations, it is clearly insufficient to raise the reasonable inference that such conduct constituted a breach of the Unions' duty of fair representation. The fact that an unnamed union official told Plaintiffs their grievances were being processed when in fact they were not, even if true, does not by itself suffice to state a claim that a union breached its duty of fair representation. Plaintiffs other allegations against the Unions do no more than summarily parrot the elements of the claim. Such conclusory allegations do not satisfy the pleading requirements. Because Plaintiffs have not adequately alleged that the Unions breached their duty of fair representation and such an allegation is a "condition precedent" to bringing suit against the employer Defendants, Plaintiffs have failed to state a claim against Defendants. Accordingly, we GRANT Defendants' Motion to Dismiss as to

Count I.[3]

## III.   ERISA Claim

In Count II, Plaintiffs allege that Defendants laid them off, failed to recall them, and closed the Indianapolis facility all for the purpose of preventing them from attaining their rights under the Plan.[4]  Under section 510 of ERISA, an employer may not "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ." 29 U.S.C. § 1140.  This provision protects plan participants from termination motivated by an employer whose desire is to "circumvent the provision of promised benefits."  Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 143 (1990).  To recover under section 510, an employee must show that the employer terminated him with the specific intent to interfere with his ERISA rights.  Teumer v. General Motors Corp., 34 F.3d 542, 550 (7th Cir. 1994).  To state a claim, Plaintiffs must allege that they belong to the class protected by section 510, that they were qualified for their job positions, and that they were discharged or denied

---

[3] Because we find that Plaintiffs have failed to adequately plead that the Unions breached their duty of fair representation, we need not address Defendants' alternative arguments for dismissal of Count I.

[4] In their Response to the instant motion, Plaintiffs also reference ERISA retaliation.  It is unclear whether Plaintiffs are attempting now also to argue that Defendants retaliated against them for exercising their rights under ERISA.  However, there are no allegations in the Amended Complaint that Plaintiffs ever made any attempt to exercise rights pursuant to an ERISA plan, let alone that they were retaliated against for such an exercise.  Thus, insofar as Plaintiffs are now arguing that they were subject to retaliation, any such claim is hereby DISMISSED.

employment under circumstances that provide some basis for believing that prohibitive intent existed. Salus v. GTE Directories Serv. Corp., 104 F.3d 131, 135 (7th Cir. 1997); Grottkau v. Sky Climber, Inc., 79 F.3d 70, 74 (7th Cir. 1996).

Defendants contend that Plaintiffs have failed to sufficiently plead the third element, to wit, that Navistar laid off Plaintiffs and closed the Indianapolis plant with the specific intent to interfere with their ERISA rights. According to Defendants, Plaintiffs' "*only* allegation related to the Company's purported intent is their assertion that the plant was closed and they were terminated 'to reduce or evade the [Company's] liability under the [p]lans.'" Def.'s Reply at 12 (quoting Am. Compl. ¶¶ 61, 63). Defendants contend that the mere fact that they closed the Indianapolis plant and Plaintiffs lost their benefits as a result of the closure is insufficient to establish specific intent. We agree that such an allegation alone would not satisfy the applicable pleading standards. However, we are not persuaded that Defendants' characterization of the extent of Plaintiffs' allegations is completely accurate.

At this early stage in this litigation, Plaintiffs must only allege facts sufficient to provide at least some basis for believing that Defendants engaged in prohibited conduct. In their Amended Complaint, Plaintiffs allege that, although the reason given for their layoffs and the eventual closure of the Indianapolis plant was that there was not a sufficient amount of work available, in actuality, there *was* work available and, rather than recall Plaintiffs to perform those jobs, Defendants subcontracted the work to other non-union plants in violation of the CBA, which eventually led Navistar to close the

Indianapolis plant due to the alleged lack of work. In their Amended Complaint, Plaintiffs allege that Defendants took such action "intentionally for the purpose of interfering with the attainment of the rights of the Plaintiffs as participants in, and beneficiaries of, the Plans, including health care and full retirement benefits." Am. Compl. ¶ 64. It remains to be seen whether Plaintiffs can prove these allegations, but assuming they are true, as we must do for purposes of the instant motion, such facts provide at least some basis for believing that Defendants engaged in prohibited conduct in violation of ERISA, which is all that is required at this early point. Accordingly, we DENY Defendants' Motion to Dismiss as to this issue.

## IV. Conclusion

For the reasons detailed in this entry, we GRANT Defendants' Motion to Dismiss as to Count I and Plaintiffs' ERISA retaliation claim. We DENY Defendants' Motion to Dismiss as to the ERISA interference claim.

IT IS SO ORDERED.

Date: _____09/28/2010_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Michael C. Kendall
KENDALL LAW OFFICE
mckatlaw@aol.com

Thomas J. Posey
FRANCZEK RADELET P.C.
tjp@franczek.com

Robert Anthony Prather
BARNES & THORNBURG LLP
tony.prather@btlaw.com

David P. Radelet
FRANCZEK SULLIVAN P.C.
dpr@franczek.com

Sally J. Scott
FRANCZEK RADELET P.C.
sjs@franczek.com