UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROBERT YEFTICH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:09-cv-1045-SEB-DKL |
| | ) | |
| NAVISTAR, INC., d/b/a NAVISTAR INTERNATIONAL TRUCK AND ENGINE CORP., and INDIANAPOLIS CASTING CORP., | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This cause is now before the Court on Defendants' Motion for Summary Judgment [Docket No. 85], filed on September 15, 2011, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1. Plaintiffs bring this action against Defendants, their former employers, alleging that Defendants denied their rights under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140. For the reasons detailed in this entry, we <u>GRANT</u> Defendants' Motion.

**Factual Background**

Defendants, Navistar, Inc., d/b/a Navistar International Truck and Engine Corp. and Indianapolis Casting Corp. (collectively, "Navistar"), formerly operated an engine plant in Indianapolis, Indiana. From approximately 2003 through 2009, the only

manufacturing work performed at that location was the production of medium-duty diesel engines for Ford Motor Company ("Ford"). Plaintiffs, forty-three former employees of Defendant, all worked at the Indianapolis plant and/or the adjacent foundry.

Throughout their employment with Navistar, Plaintiffs were represented for purposes of collective bargaining by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW") and its affiliated Local Unions No. 98 and 226 (collectively, the "Union"). While employed, all Plaintiffs were participants in various employee benefit plans governed by ERISA, including a health care plan, retirement plan, 401K plan, profit sharing plan, education reimbursement plan, and family life insurance plan.

In January 2009, Defendants announced that Ford was terminating its engine production agreement with Navistar, thereby eliminating all of the production work being performed at the Indianapolis plant, and that, as a result of this loss of business, Navistar intended to cease engine production operations at the engine plant on July 31, 2009. Consistent with Defendants' January 2009 announcement, all engine production and assembly work at the Indianapolis plant subsequently ceased on or about that date. According to Defendants, following the cessation of production at the Indianapolis plant, the engine manufacturing work that was performed there simply ended; it was not transferred to a different Navistar facility or subcontracted out to other companies. Plaintiffs allege, however, that at some point after the plant closed Defendants transferred the work to another Navistar plant in Hunstville, Alabama, where it was performed by

non-union workers. Pls.' Ans. to Interrog.

Prior to the cessation of production, Navistar and the Union commenced bargaining as to the effects of the cessation on the bargaining unit employees, ultimately entering into an agreement entitled "UAW Closing Agreement: Indianapolis Engine Plant (the "Cessation Agreement"). The Cessation Agreement provided for all of the bargaining unit employees who worked at the Indianapolis plant to be placed on layoff when production ceased. Pursuant to the Cessation Agreement, employees had various options upon the elimination of their positions, including enhanced pension benefits in the form of early retirement options as well as the opportunity to be placed on Navistar's "Master Recall List," meaning that they could potentially be recalled from layoff to placement at other Navistar facilities. Laid off employees were also given the option of accepting a Master Recall List buyout, whereby they would receive a payment of $7,500 in exchange for their agreement to relinquish their right to be recalled to other Navistar plants. Employees who accepted the buyout retained their "local" recall rights, meaning that they would still be eligible to be recalled to the Indianapolis plant in the event that engine production ever resumed at that location.

The parties dispute the employment status of Plaintiffs at the time engine production at the Indianapolis plant ceased. According to Defendants, as of July 31, 2009, eighteen Plaintiffs had already ended their employment with Navistar for reasons unrelated to the cessation of production; after production was terminated, twelve other Plaintiffs voluntarily resigned or retired between August 2, 2009 and February 1, 2011;

3

two Plaintiffs accepted employment with Defendant at other locations; and eleven Plaintiffs currently remain on layoff. Plaintiffs, however, contend that no one left voluntarily; instead, they were all forced either to resign or retire or to remain on layoff.

## Legal Analysis

### I. Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.

The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Thus, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enter., Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

## II.   Discussion

Section 510 of ERISA makes it "unlawful for any person to discharge, fine, suspend, expel, discipline or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140. Under § 510, a plaintiff must "show that the reason he was terminated was to interfere with his rights under ERISA." Fairchild v. Forma Scientific, Inc., 147 F.3d 567, 576 (7th Cir. 1998) (citing Lindemann v. Mobil Oil Corp., 141 F.3d

290 (7th Cir. 1998)). In other words, "[t]he employer must have the specific intent to deprive an employee of his plan rights." Isbell v. Allstate Ins. Co., 418 F.3d 788, 796 (7th Cir. 2005) (citing 141 F.3d at 295).

Here, Plaintiffs have failed to come forward with any evidence of an unlawful intent sufficient to create a genuine issue of material fact. In fact, in their brief in opposition to the instant motion, Plaintiffs "adopt as undisputed" almost all of the facts asserted in Defendants' brief in support, including Defendants' assertion that Navistar's decision to cease engine production operations at the Indianapolis plant "was based solely on Ford's decision to cancel its agreement to purchase the only product being manufactured at the [plant] – Ford diesel engines. The cessation of engine production was not motivated in any way by an intent to interfere with and/or avoid obligations related to the Plaintiffs' rights to ERISA plan benefits." Defs.' Mem. at 5, SOF ¶ 9; see Pls.' Resp. at 3 (adopting as undisputed Defs.' SOF ¶ 9). Because Plaintiffs cannot establish an entitlement to recover on their claims without evidence to show that Defendants specifically intended to interfere with their benefits, these admissions are fatal to their case.

Even if Plaintiffs had not made such admissions, their lawsuit still could not survive summary judgment. Although Plaintiffs assert that they "have evidence such as ... documents, testimony, and grievances" that establish unlawful interference with their ERISA rights, they have entirely failed to identify such evidence in response to Defendants' motion. It is well-established under Seventh Circuit law that summary

judgment is the "'put up or shut up moment in a lawsuit, where a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" Steen v. Myers, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005)).  Here, Plaintiffs have offered nothing more than conclusory and unsupported assertions in the form of responses to Defendants' interrogatories and requests to admit, which in addition have not even been filed by all Plaintiffs.  Such deficiencies defeat any attempt to forestall summary judgment.

### III. Conclusion

Having failed to come forward with evidence to establish the existence of a genuine issue of material fact as to an element on which they bear the burden of proof at trial, Plaintiffs cannot survive summary judgment.  Accordingly, we GRANT Defendant's Motion for Summary Judgment.  Final judgment shall issue accordingly.

IT IS SO ORDERED.


Date: _____07/24/2012_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Michael C. Kendall
KENDALL LAW OFFICE
mckatlaw@aol.com

Thomas J. Posey
FRANCZEK RADELET P.C.
tjp@franczek.com

Robert Anthony Prather
BARNES & THORNBURG LLP
tony.prather@btlaw.com

David P. Radelet
FRANCZEK SULLIVAN P.C.
dpr@franczek.com

W. Russell Sipes
THE SIPES LAW FIRM
sipeslaw@aol.com